Next case on today's docket is the case of the matter of T.P.S. and K.M.S. minor children versus Katherine B.W. We have Mr. David Goroff for the appellant and we have Theresa Machiavelli-Hopkins for the appellant. You may proceed with your preparatory search. Good morning, Your Honors. May it please the Court, I'm David Goroff and I'm here along with Michelle Schaefer and John Knight, my co-counsel this morning. On behalf of Kathy W., the co-guardian appellant here, and Ms. Machiavelli-Hopkins and I have agreed that because of the privacy interests of the children involved, we'll refer to our clients by their first names if the Court is okay with that. Your Honors, this is a case where a necessary party, an existing guardian with joint and shared custody over two children, was erroneously denied standing to even defend that guardianship or to speak to the best interests of the children in a proceeding designed to terminate her rights. And as this Court noted in its Anast case some time ago, a decision made without the presence and full participation of a guardian lacks a necessary party and cannot stand. And what is central to Kathy standing here is that her status as co-guardian with equal and shared custody came at the request of and consent of Deanna, the biological parent of the children. There's no question that at the time these guardianships were created, Deanna consented to this. This is what she wanted. She moved the Court for this and asked the Court, and she swore under oath at the time that this was in the best interests of the children. And the fact that these were co-guardianships created by consent shows that Deanna's superior rights as a parent were properly respected at the time. She did not have to consent. She did not have to move the Court. She did not have to give evidence as to the best interests. But because she did, she ceded in the creation of a co-guardianship some of the absolute parental rights she otherwise would have enjoyed. Was there a formal hearing to establish a guardianship? There was indeed, Your Honor. And indeed, not only was there a formal evidentiary hearing which looked at the best interests of the children, but there was also guardians at Leiden appointed in each case. And in each instance, the guardian at Leiden interviewed not only Kathy and Deanna, but also their friends and families, and made the decision and recommendation that this would be in their best interests. So the fact that this was not something done hastily by the courts, and it's also very important, Your Honor, that Deanna is not suggesting in her petitions that the Court acted improperly in creating these guardianships. There's no question that the Court did the right thing and what she wanted as parent in giving Kathy her original powers. And the guardianships that were created were plenary. They were unrestricted. They were unconditional in time and in authority. And importantly, they were in no way dependent on Kathy and Deanna staying together as a couple. Have you ever been involved in a case before where you have a parent as a co-guardian of another case? It's an unusual circumstance under Illinois law, although other states, such as Ohio, which don't allow for same-sex couples to have second-parent adoptions, have similar kinds of guardianship relationships. Does Ohio not allow it by statute, is that what you're saying? In Ohio, there's a body of common law that allows for a certain kind of guardianship where a non-biological person can have what amounts to as close as possible equal parental rights with a biological parent. In this case, Your Honor, Section 1113 of the Probate Act gives those who are appointed guardianship custody. And so here we have – and this is not custody in this case that is in lieu of Deanna. This is shared custody. You had both individuals to be equally involved in the children's lives. It doesn't fit in very well with the case law or the guardianship statute, does it, to have a co-guardian and one of them being the parent? Well, I think it's actually an appropriate way for the court to have resolved what was sought there. Adoption would have been the appropriate one. Adoption would have been available if they had consulted an attorney who told them that courts in Williamson County would not approve of this because they were a same-sex couple at the time and that a co-guardianship was the next best thing. The court, taking into account who they were and what their intentions were for the children, agreed that a co-guardianship invested Ms. Cathy with plenary rights as the custody. Is there some indication that this wouldn't have happened had there not been a relationship, a prior relationship between the parties, that this couldn't have happened if it was the next-door neighbor, if it was Aunt Millie from down the street or something, that they couldn't have established the exact same co-guardianship? Your Honor, there are co-guardianships under Illinois law, and particularly, for example, in disabled adult contexts. No, but I mean, is there some indication that by far the sexual relationship between the parties, this wouldn't have been approved? Well, with due respect, Your Honor, I don't think the – I think the fact that they acted together as a family was important in the creation of the guardianships. And it certainly was something noted by the guardians at Lytton, and it certainly was taken into account. But importantly, once the guardianships are created, that changes the calculus in terms of the presumption of superior rights that Deanna would otherwise have enjoyed as the biological parent. And it means that if she later seeks to modify or terminate that guardianship, the standards are very different than if she never consented in the first place. And there's good reason for this. She not only consented initially, but they lived with the children for years in the case of the son, and for many, many months in the case of the daughter, with Kathy having shared custody. And this made a monumental and positive difference in those children's lives. There's no question that with the legal custody, she could make medical decisions, even as to surgery. When the trial court made the statement that it did not believe that Kathryn had no standing, did somebody point out Jordan M. to him? Yes, Your Honor. Jordan, among other things, was the centerpiece of a reconsideration motion following Judge Eckes' initial decision. How did he justify the disposition, then, if Jordan M. says exactly the opposite of what this trial court said? Well, Your Honor, we do believe that Jordan is the appropriate authority for this court to follow here. And certainly, it was binding in the absence of any contrary authority from this court on the circuit court below. But what Judge Lewis said in denying reconsideration was that he believed that the birth parent there had been out of the picture, had surrendered, essentially, her rights. We don't think that's a proper reading of Jordan. We don't think that's what happened in that case. But in any event, we don't think that's the determinative factor. We think what Jordan compels is once you have a guardianship created with birth parent consent, that appropriately accounts for the superior rights the birth parent has, and therefore satisfies the concerns of Troxel, which the courts below were concerned about the U.S. Supreme Court case in Troxel. From that point forward, Jordan suggests a two-part test, which was not followed below. And that part of the test would be, first, to put the onus on the birth parent, in this case Deanna, to show a change in circumstances. And the change in circumstances test, if one looks at the body of law under Illinois law, appears to be focused on the relationship between the guardian and the child. And here, there's no change in the law, in the strong bonds, in the ability of Cathy to nurture and care for the children. No one is suggesting that. What has changed is that they have broken up as a couple. But do we even get there at this point? Aren't we just determining the standing issue? Your Honor, I believe that's correct, that what is before this court is essentially a standing case where a necessary party was denied her right to participate. I think what is called for is reversal because of that and remand to the circuit court so that it can conduct a proper evidentiary hearing on the contentions in Deanna's petitions. I do think no one suggests that the court below wasn't acting in good faith or grappling as best it can with what is, Your Honor, an unusual and difficult issue. We think that in trying to do that, if you look at Judge Eckes' docket notes and you look at what he said on the record of the August 31st hearing, was that the court wanted guidance from this court. So we would also ask that if the court is inclined to reverse and remand, that it do provide guidance to the court below that the Jordan standard of changed circumstances and best interests be followed. So we don't think that it can compel the court how to weigh those tests or what the outcome should be. Do you think that our ruling then should apply only to same-sex couples? Getting back to my initial question, or should it not apply to a co-guardianship where the next-door neighbor was a co-guardian, where there was no relationship at all between, you know, no sexual relationship or whatever, couple relationship between the co-guardians? No, Your Honor, I think, and Jordan is a good example, because that was not a case involving a same-sex couple. And yet I think it is a case involving existing guardianships created by consent. So I think what we're looking for is a broader umbrella ruling that happens to cover guardianships created for same-sex couples, but it's certainly not limited to that circumstance. Now, we want to think, isn't this also the important question on how does a parent that's consented revoke the guardianship? What's the procedure? It does raise the question of once you have not just consented to the formation, but I think it's very important, lived with the consequences of that for a number of years or a good period of time, if you then want to change things, what is the appropriate standard? And I think Jordan says the appropriate standard is first, it's incumbent on the biological parent to show a change in circumstances. And you seem to focus on the circumstances between the co-guardian and the children. I do, Your Honor. What about the circumstances that the couple has, the relationship's no longer there? You know, Your Honor, I don't think that that can be ignored. And so I think that that is part of the totality of facts that a court would have to look at for changed circumstances as well. The mother in Jordan no longer has her mental problems or whatever it was. She's taking medication now. The parents back from overseas on an army detail or something, those are changes, circumstances that would have nothing to do with the relationship between the guardian and the children. That's right, Your Honor. I would say that in cases where there's a mental health or physical health disability or a parent is overseas, you have the ability to create temporary guardianships, which are specific to the timing of that disability, and then expire. Yeah, assuming you knew the extent of your mental disability or you knew the extent of how long you were going to be in the Himalayas looking for whatever. And that's not the case here, of course, Your Honor. Here these are unlimited in time or duration, and they're not conditional on the parties staying together. And I think there's good reason for that, because the children, to them, what's important is that they have two parties functioning in a shared parental role and making decisions in their best interests together. And that, there's no question, made them healthier, happier, and better off as children during the time that that existed. And what Kathy was prepared to show but was unable to was she had abundant witnesses, seven witnesses who came with her, to talk about the full spectrum of the children's lives that they had had with Kathy and Deanna and how Kathy's role as primary caregiver, as nurturer, as someone providing psychological and social support, as someone who provided some financial support, all of the differences that made, how the children would be comforted by her when they were sick, how she was there making medical decisions for them. And you can imagine the enormity of the harm, Your Honor, when because Deanna decided unilaterally that she no longer wanted to continue with Kathy as a couple, she also decided that the children would no longer have any contact with someone who had been their custodian whatsoever. And it was not merely as a custodian. Deanna had also encouraged them to call her mom, to, Your Honor, look at the photographs and the greeting cards. Don't we have to look at this in the context of the Superior Rights Doctrine? You do, Your Honor. And what Jordan says, and this Court has substantial experience with the Superior Rights Doctrine, for example, in the Defoe case, is that that creates a presumption. It is a rebuttable presumption, however. And what Jordan says is that once there is a legal guardianship created with consent, that properly accounts for that. Troxel was the grandparents' visitation statute case. It was out of, I believe, Washington State. And what that statute did is it said that grandparents were entitled to have visitation unless the biological parent or parents could show they should. So it flipped on its head what the Supreme Court decided was necessary because it gave the grandparents the presumption rather than the birth parent. Troxel says, and it's not a guardianship case, it's certainly not a consensitive guardianship case, Troxel says you have to, at least in the first instance, respect the superior rights. And no one has denied Deanna's superior rights initially as birth parent. We're saying that when she agreed to the guardianship and then lived under that without objection, that changed the circumstance. It pushes the burden back on the opposing counsel to show a change in circumstances. That's right. And you're saying that the fact that the parties no longer live together, that's not a sufficient change of circumstances? Well, I'm saying I think that is a factor. But, Your Honor, if I grant you that it is a change in circumstances, that's only the first part of what then becomes the two-part test. Because even if not living together is enough, and the reason is there's a KDS case where the uncle remained as guardian even though he sent the children to live somewhere else because he was still invested in their custody and the residing in the same house in that case was not deemed to be necessary. So that's why I think that, but I think that's always a case-by-case, fact-by-fact analysis, and I think that's what certain courts can do is they evaluate bodies of evidence. I think that this court below is certainly able to do that. I think it just didn't because it misconstrued the standing principles. Judge Eckes had indicated that he believed he didn't have jurisdiction, was the term he used, to allow Cathy to go forward with her evidence. Well, as Your Honors know, standing is not a jurisdictional issue in Illinois. Under the Greer case, and many others from the Illinois Supreme Court, rather it is in the nature of an affirmative defense which, if not raised, is waived. And it didn't raise it in her pleadings. You have the cases we cite, the KPL case and others, where that, too, is an independent waiver. The court also believed that the more onerous standing test of the Illinois Marriage and Dissolution of Marriage Act should have applied. The RLS case of the Illinois Supreme Court said that in guardianship instances it doesn't. And so that was just a standing decision that they denied standing to someone who not only, I believe, had standing, but again, under the Anast case, was required to be there. And I think it's sort of self-evident that if you're talking about a guardianship, if you think of it as a thing, the person who's holding the thing, if that person is not before the court, the court really isn't getting the benefit of the adversary process, of hearing both sides. It's only in this instance hearing the petitioner's side. The petitioner's side is certainly worthy of consideration, but what the Jordan test requires is that not only is there a change in circumstance, but that if that's shown, then the burden should have flipped to Cathy to be able to come in and show that the best interest of these children require the ongoing continuation of the status quo, which is that she was equal guardian and was shared custody. These are always difficult decisions, Your Honor. But I think, again, what Jordan says and what other courts have done is that in doing a best interest test, look historically at the criteria under Section 602 of the IMDMA. And what that criteria says is that one of the things is what does the birth parent want? That is a factor, even under the best interest test. But a second is the children's relationship with the other party. And what does the child want? And what differences or impact is there in terms of their schooling and their social lives? Those are factors beyond simply the desire of the birth parent that should have been considered. And so what we are asking, Your Honors, is that the circuit court be sent this case back so that a proper evidentiary hearing can be conducted. I thought Jordan said that you don't get to the best interest part there. It doesn't shift back there until after you show a change of circumstance. That's correct, Your Honor. I'm presuming that if it goes back, the court may consider the fact that the children are living with their birth mother and that she is no longer part of a relationship with Kathy to be a change in circumstances. I'm saying even if one assumes that is true, that is only part of the test. And there's an important symmetry, Your Honor. Just as best interest was required to create Kathy as co-guardian, so best interest should be required at the very least to terminate her interest. And just as Deanna's avowal of an interest in creating those co-guardianships was not enough, they looked also at the guardian ad litem report and other totality factors, we also believe that her wish alone to end this relationship should not be enough. As I was saying, Your Honor, these are difficult circumstances, but Your Honors have analogies in the cases where there are two parents who no longer wish to live with one another, and there you still look out for the best interest of the children, and the courts are very, very experienced in doing shared custody arrangements and other things which continue the rights of someone who is in reality in the role that Kathy played here. I see that my time is up. Thank you very much. Thank you, Mr. Goroff. You'll have the opportunity for rebuttal. Ms. Machiach-Hopkins, you may proceed. Thank you, Your Honor. May it please the court, counsel, my name is Theresa Machiach-Hopkins, and I represent Deanna, the biological mother, happily in this case. When I filed the petition to terminate the co-guardianship, I thought this was a rather easy case. You have a situation where you have a biological parent who has two children. She had a relationship with another person. That other person had co-guardianship. The parties at the time of the filing of my petition to terminate co-guardianship had been separated for nine months. When the biological mother moved out of the residence with the co-guardian, she took her children with her. There was no filing of visitation. There was no filing of wrongful taking away of the child that Kathy thought she had custody of. What this case boils down to is whether or not Kathy is going to continue to see the children. Even after the filing or the decision by Judge Ickes, the biological mother continued to utilize Kathy in a role as watching the children while she's at work. It wasn't until the time of the filing of the motion for reconsideration at the trial level that the biological mother made the determination to cease all contact with Kathy. Whenever potential clients come into my office to discuss the differences between guardianship, custody, and the differences between them, I always tell them that guardianship is at the bottom because it's the easiest to terminate. With custody, you have third-party standing requirements that are necessary. And if you have a custody order, then you have the stringent two-year requirements for modification, with adoption being at the very top. And we would disagree with counsel's assertion that the biological mother in this case ever sought a question about adoption. Didn't they talk to a lawyer about adoption? When they went in for the guardianship, it was Kathy who asked about adoption. The biological mother was in no way ever agreeing to allow Kathy to adopt these children. And it's clear, and it's part of the record also that I think Judge Ickes reviewed prior to coming into the hearing. The guardianship report filed by Andrea McNeil with regards to the second child, she says that when she met with the parties, that the reason that they were seeking this, and it's in her report, was to access medical care for the child, and that Kathy would have legal rights to continue caring if something were to happen to Deanna. That was the whole purpose, their whole mindset when they went in for this guardianship, was that if Deanna was at work, Kathy would then be able to get medical care for the children, because Deanna is a UPS driver and is gone. And in the event that something happened to Deanna, that Kathy would keep the kids and raise them.  And it turns out that there was never any intent for custody, joint custody, equal parenting. And if the court also reviews the orders in this case, they're different. With regards to the oldest child, the order sets out that Kathy has co-guardianship of the person, of the oldest child. With the second child, she was given guardianship of the estate and person, and letters were issued. So these aren't similar situations. And the word custody is not mentioned anywhere in either one of the orders. How do you distinguish Jordan and him, that a co-guardian does not have standing? Well, Jordan was never mentioned in front of Jitikis. It only came up on the motion for reconsideration. Our position is that Jitikis, in his docket entry, made a specific finding that there was a change of circumstance. He knows that the parties had separated. And when Judge Lewis was talking about Jitikis coming back to Chambers and prior to writing his opinion, he talked to Judge Lewis because Jitikis knew in his mind he was going to be leaving the next week and retiring. He... I think that was the primary onus in his mind, was that you have a biological parent who is separated from this person. Biological parents' rights to determine who's going to be around this person is a superior right, and that's what he based it on. So how do you determine that change of circumstances is in the best interest of a child that will never see a co-guardian? Well, that's not what happened in this case. It wasn't until the following motion for reconsideration that all of the contact was cut off. After Judge Jitikis' ruling, the children were continuing to see Kathy during the day while my client was at work. The change of circumstance in this case, the parties had been separated for a period of time. She had moved out of the residence. The basis of the guardianship to begin with was not free from custody but was for medical decisions and in the event that Deanna died. So I think he was also utilizing what he had in the record at the time prior to the motions for reconsideration with all the affidavits attached. The mother being, I assume, a parent, why would she need to be a co-guardian of her own child, her own children? As opposed to giving guardianship to her partner completely, you mean? I don't know. It just seems to be kind of redundant to have a parent of two children being appointed guardian when there's... Well, I think it was... I guess you could analogize it maybe when a parent remarries and the new husband or wife or whatever wants to adopt the kid. Sometimes their children, sometimes they're listed in the adoption case as an adopted parent. But doesn't this cause some problems when you have a natural parent being a guardian? I think, well, Deanna was never going to give up any rights she had to her children. I think the intent, and it's clear from the guardian ad litem report, was that her concern was that because she wasn't married to this person, that if they went to the doctor, there would be an issue with regards to getting emergency medical care. It's not like my situation where my husband could take the kid. Was your client appointed co-guardian? Yes. And also, in this case, you have the issue of, and I think it was what you were talking about previously with counsel, was if it does go back, you have to look at best interest. What's going to be the standard? Is the standard going to be Jordan, or is the standard going to be the new statute that just went into effect in January? I think the legislature essentially recognized, because you see this a lot, primarily with grandparents, who are being put in the position of having to raise their grandchildren, and they're coming in with regards to issues of guardianship and or custody. And then the parent gets their act together, and they come in, too, in a completely different circumstance where you've had a grandparent raise children, and then the parent comes in, and they've gotten off the drugs, or they've gotten their life together, and they want their child back. So I think the legislature recognized that, and that's why they came out with the new guidelines with regards to revocation of letters in a guardianship case. But in this case, I think that Judge Ickes was correct in making the determination at the trial level that there was a change in circumstance. Parties were not living together. Deanna had a superior right over Kathy. Terminated the guardianship. When I had my children, I was fortunate enough to have a situation where I had a caregiver come into the house and take care of the kids while I was at work. And she spent a lot more waking time with my children than I did. And now that my children are in school, the teachers certainly spend more time with my children than I do. But I never advocated my rights as a parent. And even though my kids care about their teachers and or their original caregiver, that didn't mean that I gave up my rights as a parent. In this case, after... But you didn't enter into co-guardianship with any of these people that were spending more time with your children. The co-guardianship with the intent of only giving the access to medical care and in the event that I died, that that person would continue taking care of the child, that was the limit of my client's belief as to what would happen, never raising Kathy to anything other than that. And that's clear from the guardian ad litem report. She, for nine months, up until the filing of the petition for guardianship, she continued to take care of the children a couple of days a week while my client was at work. That does not mean that she in any way, shape, or form acted as mom, was the mother, or that Deanna gave up any of her rights to make parental decisions for these two children. What did the children call the co-guardian? It depended on where they were, Your Honor. They were with my client after the separation. They called her Kathy. I don't know what they called her when they were around her. I imagine she probably encouraged and told them to call her mom. These are young children that we're talking about also. They call all sorts of people different things. We would ask the Court to affirm the decision of Judge Ickes and the motion for reconsideration decision by Judge Lewis. If there are any other questions. Thank you. Thank you, Mr. Spiller. We have the opportunity for rebuttal. Your Honor, Ms. Maxwell-Hopkins said that the circuit court below made decisions as to change circumstances and the like. Actually, I think the best evidence of what the court below said is Judge Ickes' own words. Page 13 of the transcript on August 31st, he said, so at this point in time, I will enter an order without evidence, purely on the law, purely on the legal argument, not weighing anything about what is in the best interest of these children, and terminate the guardianship. And he made clear that he did so because he believed he did not have jurisdiction and he believed that Cathy did not have standing. And as we've discussed, Your Honors, we believe that while entering it with the best of faith, because Judge Ickes definitely struggled with this decision and asked for guidance to resolve this in a way he thought was more fair and equitable to Cathy, but that was not what the law required. Ms. Maxwell-Hopkins talks about a lot of facts, about what her client would have agreed to and wouldn't have agreed to. Those are the sorts of facts that are best decided by a circuit court in an evidentiary hearing. We don't have a factual record. We have a dispute because Cathy has submitted an affidavit that says it paints a very different picture, and she's not alone. We have seven other affiants who are painting the same picture as Cathy described, and that is for the circuit court to consider and weigh that evidence. Your Honor asked what do the children call Cathy. They called her mom, and that was with the encouragement, consistent encouragement of Deanna. And if Your Honors look through the appendix, you'll see Mother's Day cards, happy birthday to the number one mom. Your son and I love you very much. And the doctor, when they go to the doctor, they call her mom. The nurse practitioner. But we do agree that that's not before us now. I do agree with that, right. But if we're going to get into the facts, there's a dispute. All we have to decide is what is the procedural steps necessary to revoke a guardianship that was established by consent. With birth parent consent. I believe that's correct, Your Honor. And what the standards are if indeed Cathy has standing in this necessary party, which we believe to be true. And one other thing that Ms. Mashko-Hopkins said that I do want to correct, because the record shows otherwise, is that while the guardian ad litem for the daughter referred to the desire for Cathy to be able to make medical decisions in case of incapacity of Deanna, that was not what the guardianship was limited to. Under Section 1113 of the Guardianship Act, a guardianship over the person, as this was with the person in the estate, includes custody. It includes custody and the right to make decisions as to tuition and education and the responsibility to do so. And if Your Honors look at the record, C-277, they came before the court and jointly and separately bound themselves to the people of the state of Illinois that they will discharge faithfully the duties of the office of the guardianship of the estate of KMS. The order appointing them was for the estate and person of KMS. There were letters of office which gave each of them the care, management, and investment of the minor child's estate and to do all that was required by them of law. So these were not limited guardianships. They were not temporary or standby guardianships, which would have been the kind of guardianship that would have been created were these simply for if there was a disability or incapacity. Is there any indication as to why there was a difference in the type of guardianship? Well, you had, it wasn't, the difference is actually greater. The daughter of the guardianship refers to the person and the estate. That's what I'm asking. I don't believe there is other than there were different judges and different guardians that might have been different lawyers. But I think certainly the person includes the custody under 1113 of the Probate Act, and Kathy has that for both children. If your honors have no further questions, thank you very much for the time.